Your Honors, Jeff Immig representing Hang on a second, just a minute, Mr. Immig. Ready to go, Counsel? Okay. Go ahead, Mr. Immig. Representing Yolanda and Robert Quihuis. Quihuis. Quihuis. Thank you. Okay. May it please the Court, I'd like to reserve three minutes for rebuttal, if I may. I'll help you. Thank you. This is an insurance bad faith case arising out of an accident where Mrs. Quihuis was injured after being hit by a vehicle driven by a woman named Ileana Bohorquez. The evidence at the time indicated that the vehicle was owned by the Cox's, and that was confirmed by the Cox's when they reported to State Farm that Ms. Bohorquez was driving with their permission. Doesn't this case turn on when ownership transferred? It does to the extent that the District Court was proper in allowing State Farm to re-litigate that issue after judgment was entered against the Cox's for negligent entrustment. You're not suggesting that the parties can agree or stipulate to facts in order to make sure that they're covered under the policy, are you? Doesn't the case law say they can't do that? Well, Your Honor, I believe the case law, including AAU, says that when liability facts are decided in the judgment below, and those facts overlap with coverage, that they are determined by the judgment below. Let me ask you a question I've been struggling with. So Morris has pretty strong, it's the Supreme Court, the State Supreme Court, and has pretty strong language about you can't manufacture coverage, you can't get coverage that you didn't pay for. And I think Wood then distinguishes that language, suggests it's dicta, and suggests that in a case where there's an overlap of coverage, the only thing that the insurance company can litigate would be those things that aren't covered by liability. But we're bound by the State Supreme Court. We look at the appellate court, but we have to predict where the state court would come out. Now, I didn't see any other cases that was really shedding much light on what seems to be a tension between Morris and Wood. And so one question that came to my mind was, is this the sort of question we should certify to the State Supreme Court? Well, Your Honor, I don't believe that AAU and Morris are actually in conflict. Obviously, if the court believes that it's an issue to be certified to the State Supreme Court, that would be up to your discretion. I think that if we look to the case Dairyland Insurance, although it didn't come after Wood, it is an Arizona Supreme Court case. And in that case, that closely parallels or mirrors this case, the insurance policy provided coverage if the vehicle was not owned by the insured. And the judgment below necessarily determined that the vehicle was not owned by the insured. And then in the coverage portion of the case, even though all of the evidence indicated that the insured actually did own the vehicle, the Arizona Supreme Court held that the insurer was not allowed to relitigate those issues, that they had been decided by the judgment below. This is a delicate balance that the courts have established where the insurer is bound by that judgment when they abandon their insureds and refuse to defend, but only those, but they're only bound by facts that are necessary to that judgment. And only if there's not a conflict of interest. Here, I think all of the parties agree that ownership is necessary to a finding of negligent entrustment. But ownership is also a basic coverage issue. And so I'm still concerned about what we do with the language in Morris, that any stipulation of facts essential to establishing coverage would be worthless. Can't relitigate that. I mean, that's the very plain and apparently applicable to this context in Morris. Right. And then the court in Wood says that Morris actually precludes re-arguing those issues. Well, Wood distinguishes Morris and calls that language dicta, I know, but that's just the appellate court, right? They do that, you know, they do that all the time. But I think there's language in Vagnozzi as well, which incorporates the restatement section 58. And again, that's the state supreme court. But that makes sense. I mean, in other words, if the insurance company wrongly refuses to provide coverage, and then the insured is at risk, I mean, all that reasoning says an insured can settle the suit with respect to its liability to the third party. And the insurance company is bound by that. I mean, the problem is that Morris says, yes, but there's a limit to that. And even Wood uses language about causation and damages as opposed to, you know, essential coverage terms. And I don't know. I kept thinking this case would get clearer to me. I don't know where that line is drawn. And it seems like it's more of a question for the state supreme court rather than the Ninth Circuit. I think the state supreme court actually drew the line in Vagnozzi and declared that insurers would be bound by facts necessary to that judgment if there's not a conflict of interest. Now, let's get back to my ownership question. Tell me when the Dameron agreement was entered into, what facts are necessarily stipulated to in the Dameron agreement that you contend are binding on State Farm? We actually don't contend that the facts in the Dameron agreement are binding on State Farm, although under certain circumstances they could be. We contend that the ‑‑ I thought you told us that because of the fact that they stipulated the facts establishing liability and those facts overlap with the coverage question that State Farm has therefore stopped to collaterally attack them. Tell me what facts you're relying on, because I have to say this is one of the most confusing set of facts I've ever seen with regard to when ownership passed from the Coxes to the Borrakeses. And I'm wondering if maybe the district court didn't err in granting summary judgment completely because of the fact that there are material issues of fact that are genuinely disputed here that a jury is going to have to sort out. And obviously we believe that that is also the case, that if they're allowed to relitigate ownership that it's a question of fact for the jury. Tell me what facts you think the Dameron agreement entered into by these parties established. Our position actually, Your Honor, is that the judgment by the trial court, the superior court in Santa Cruz County, where it was found that the Coxes were liable for negligent entrustment, that that binds State Farm. But that's a legal conclusion, counsel. That doesn't tell me anything about what facts were necessarily found to have existed, even on default, where there has been no adjudication of those facts. Well, it's a legal conclusion, but a fact necessary to support that legal conclusion is that the Coxes owned the vehicle at the time. And Bagnozzi says that facts necessary to the judgment. Why did Mrs. Boricaz call Mrs. Cox two weeks later and say, Ileana wants to drive to Tucson, will you give her permission to do that? Well, because they believed that the Coxes still owned the vehicle, and I will grant you that there are a lot of conflicting, there is conflicting evidence on the issue of ownership in this case. It's a suggestion of collusion. In the sense that the two women worked together at the same place of employment in Nogales, and there's a suggestion that maybe the Boricazes didn't really have the money, which is why they wanted an installment sales contract. There's no money that changed hands when the sales agreement was signed. But if we looked at this on a straight contract law basis, I would have to conclude that at least as early as the 9th of January, when Mrs. Boricaz signed the contract, there was no money that changed hands. At least as early as the 9th of January, there was an enforceable contract of sale here. And when the car was turned over to the Boricazes and the only set of keys was given to them, that that was acts commensurate with a transfer of ownership, even though the title wasn't changed until some time later. Let me just, following up on that question, when I went through the depot, the transcripts and the like, there didn't seem to be any disagreement between the Coxes and the Boricazes that there was a sale agreement. It seemed to be a confusion about whether the insurance traveled with the car or was specific to the owner. I mean, there was confusion about whether the Coxes could maintain insurance and it would cover the car once it was owned by the Boricazes. But they both agreed that the car had been sold and purchased, and that was their intent. And that seems to be all that's necessary under Arizona law. Am I wrong on that? Well, I don't believe that they expressed an intent as to when the sale took place. I think that there were discussions and there were movements toward a sale taking place, but there's conflicting evidence about when that sale was ultimately consummated. I thought I sold the car to her and Boricaz said, yeah, we thought it was our car. And when asked, why did you call to get permission, she said, well, because of the insurance. And so there was clearly a misunderstanding about the legal effect of the insurance of the sale of the car on the insurance. But I just didn't see any doubt about the sale. So what language specifically would you point to? Well, when she called State Farm on January 17th, Mrs. Cox said that she was in the process of selling her car. So the statements to State Farm, and then she said my car was an accident. But, I mean, don't we discount those because, you know, obviously she's trying to get the insurance coverage for the situation? I mean, when asked directly, did you sell the car, she said yes. So those statements didn't seem to be very probative. Is that enough to create a genuine issue? I don't believe that there's self-serving, Your Honor, because if she didn't own the car, then she's not going to be liable and having insurance doesn't serve her in any way. But now we're back to the Damron agreement. It does, if you've entered into an agreement that protects the remaining assets that you own from having a judgment executed against you for the amount that's left over after all the insurance money is paid. Well, of course, the Damron agreement came long after these conversations that we are talking about here. And in the Damron agreement, the parties did agree that the Coxes owned the vehicle at the time of the accident. One way that I look at this record, and I think a reasonable jury could reach that conclusion, is that because of their poor financial situation, the Borrachezes were trying to ride on the coattails of the Coxes' insurance policy for the same reason that they couldn't deliver the full purchase price on the car and needed an installment contract. And so what's really going on here is a collusive agreement between the parties involved in order to lay off on some of the insurance. And so what's going on here is that the Borrachezes are trying to lay off on State Farm the damages from this accident purely for financial reasons. And if that's the case, then the Arizona case law with regard to stipulations that manufacture coverage seems to directly apply. Your Honor, collusion and fraud were not pled by State Farm. They were only raised very belatedly in this appeal. The cases that you're relying on and that we're talking about with you this morning all mention the concern, the public policy, if you will, about the risk of these kinds of agreements. And I think that it's a valid concern for the State of Arizona. And perhaps it's a question for a jury, but it was not the basis for the district court's decision. And it has not been pled below, and I don't think that it should be the basis of any decision here. I wanted to save some time. Maybe we should hear from State Farm, and then I'll give you the final word. Good morning. I'm David Bell, here for State Farm Insurance Company. May it please the Court. The district court's ruling granting summary judgment to State Farm is entirely supported by the uncontradicted record that as of January 8-9, Carol Cox sold to Norman Borrachez, pursuant to a written sales agreement that uses the words Cox has agreed to sell to Borrachez's 1994 Jeep. It's uncontradicted. At that point in time, she turns over the keys to the Jeep to Mrs. Borrachez. It's uncontradicted. Norman Borrachez then takes the Jeep and the keys and gives them to her daughter, Ileana, and from that point forward, it's Ileana's vehicle to use as Ileana sees fit, along with her parents. Carol Cox and her husband had surrendered all control, all possession. They still retained the title document. They had the title document. And she explained, well, I thought that was the procedure, that's what it was in Florida. Correct. Because of her, whatever experiences that she had in Florida, she felt that she had to hold on to the title until all the payments were made, or at some point, at which point then she signs over the title. But clearly that had nothing to do with State Farm, let's say, inducing that understanding. That's something that she held personally. And also, in the context of contract law, it does not contradict from the manifest, objectively manifested intent of the parties, as reflected in the written agreement, that the Coxes were selling the Jeep to the Borrachez's and turning over all possession and control to the Borrachez's as of January 9th. Well, how about her statements, which opposing counsel points to, to State Farm? She said, I'm in the process of selling my car. And then when she calls up about the accident, she said, it was my car in the accident. I believe that it was those statements that the district court correctly found that those are not material facts as to the contract itself. Those are statements made eight days later, nine days later, at the time State Farm is investigating following the accident. And as to what her objectively manifested intent was in the contract itself, those statements don't challenge it. Later on, when she's inquiring about, she's calling up her agent as of the 17th of January, she uses the phrase, we're in the process of selling. Well, that could be negotiating a deal. That could be we're looking at what to do. She acknowledged her deposition. She used that phrase to which no one at State Farm said, oh, well, then your policy is still in force. And they didn't clarify it further. Further, I think Norma Borrachez called, and there was testimony that she called State Farm about applying for the policy. Again, it was the notion that there was no information provided to the agent at that time that indeed a written sales contract had been signed and executed eight days before. There was no evidence that the agent was informed that the Cox's had surrendered in turn over possession of the Jeep to the Borrachez's at that time. So I believe those were not, those statements were considered by the court not only in the context of what's a valid and enforceable contract between the Cox's and the Borrachez's. I believe the court also expressly addressed them in the context of whether or not those facts gave rise to equitable estoppel. And it found that they didn't. Can I switch to a different topic? Go ahead. Was Wood wrongly decided? If not, how do you harmonize it with Morris? In AAU versus Wood, the insurer, after the Morris agreement was put together, basically took the position under Morris that they could relitigate everything. They wanted to go into liability, damages, injuries, not merely just the coverage issue of … And Morris precludes that. Right. And Morris precludes that. And the court, particularly at symbol paragraphs 34 and 35 of the decision, points out that this is distinguishable from Morris, where at least in Morris, USAA limited its reservation of rights to this issue of whether the injury was negligent or intentional. And so it limited its coverage dispute to that. And they didn't try to litigate whether there was a fight, whether there was an injury. But the settlement agreement in that case in Morris didn't state it was intentional or negligent. It said whether it's intentional or negligent. So that issue had not been determined by the settlement agreement. Correct. And insofar, and let me take that a bit further, insofar as counsel here argues, well, and I've heard it, seen it, read it, and I've seen it, we're not trying to say that the settlement agreement is binding. We're saying that the findings of the court are binding. Well, if you look at the actual judgment entered by the Santa Cruz court, one, it notes that the defendants defaulted, period. There's no answer to this allegation that you're liable for negligent entrustment. Both defendants defaulted. Then a couple of months later, the default is entered. And then three months later, the hearing is held. But the court describes that hearing as on the issue of relief to be awarded to the plaintiffs. Damages. It was a typical default damages hearing. Again, that court did not address whether or not the Coxes owned the vehicle for the purposes of negligent entrustment. But they couldn't have awarded damages unless there was a finding, implicitly even, that they owned the vehicle. I would submit that they can't award damages in that default situation. If the defendant defaults and says, we don't fight on liability. We can set the liability. The court doesn't even address that issue. And so you get into the Vagnozzi situation, and I would submit the Manzanita v. INA situation that came before this court years ago. From the standpoint of to what degree anything, first of all, litigated and is going to be binding on the insurer. And I think the courts have been very clear in Vagnozzi. In the AU, they didn't have to face that. But in particularly, and then generally in Morris, that even as to litigated facts that are decided in the underlying case, they are not binding on the insurance company where there's a conflict of interest between the insurance company and the insurer. And counsel wants to say, well, there's really no conflict of interest here between State Farm and the Coxes. But unquestionably there was. Once the Coxes take the position, contrary to their written contract, oh, we don't think that we really sold it, and we're taking that position because we want to get coverage. Well, they're trying to come up with grounds to find coverage that might make them liable as well to the Kiwis, but only on the basis that they're only doing this in the context of it's going to give me insurance coverage and they're going to give me coverage not to execute. An insured always wants coverage. By your logic, then, there's always a conflict. Because the insured's interest is getting out of the case quickly without spending my own money and without being subject to a judgment above my liability policy. That would create a conflict in every situation. No, I disagree. Tell me why. Because I think actually in the vast majority of circumstances the insurance company will look at the facts and not only the allegations of the complaint, but the actual facts. Fair enough. I gave you a bet. I guess in every situation, the few that exist, where the insurance company says we're not going to provide a defense. Right. In that situation, then, by default, then automatically that's a conflict? Right. I would submit that under Vagnozzi and under Manzanita v. INA, where this court looked at it and counsels relied upon this language, well, the conflict has to be between a litigated issue that could result in coverage versus not. And after using that phrase, this court in the Manzanita case went on to say, No, it's where there is a dispute between the insurance company and usually it says it this way. Investigation by the insurer reveals facts which tend to place the claim outside of coverage of the policy, yet the question of coverage depends on facts to be litigated in the tort suit. The insurer's interest in defending the claim while restricting this obligation to the terms of the policy give rise to a conflict of interest. So, you know, even a litigated fact that crosses over or overlaps, this court recognized creates a conflict of interest which then the insurer is not bound by the litigation. So what do we do if it would? Because wasn't there a conflict there? I mean, the insurance company obviously would prefer that there wasn't, I think it was an accident or an occurrence, that sort of coverage, and yet there was the court said, No, the settlement that was entered into saying that there was an accident, there was coverage under the accident or occurrence policy is binding on the insurance company. I simply look at it from the standpoint of the position that you took in that, which was we want to re-litigate everything and we can re-litigate everything, bearing in mind that at the point in time the Court of Appeals decision was raised. The case had already gone up to, I believe, the Supreme Court once, and they turned it back on Morris saying, Yeah, coverage is not decided yet. And then they took the position. We want to re-litigate everything. I would submit that had AAU limited its coverage arguments to simply the landlord-tenant issue and whether that existed and said that cannot be resolved, I submit we would have a different result. But that's my argument, obviously. I think we have to look at AAU in the context of Morris. Morris is the state Supreme Court decision. Morris clearly says that any type of stipulation regarding litigated as to facts that are essential to coverage is worthless. Well, Wood says that's dicta. Wood says that wasn't really an issue in Morris. And I think that's correct, isn't it? Because the intentional or negligent was held open in the settlement agreement. Right. But it still could have been something that could have been stipulated. I think Morris was simply pointing out the parties didn't even bother to do that because they realized it was worthless, pointing to Vagnozzi, which was the earlier decision, and the reason I think the court in Morris used that term, worthless, pointing at Vagnozzi where it said even as to litigated issues, the insurer is not bound if there's a conflict of interest. And so, and again, Vagnozzi doesn't limit the conflict of interest to simply those things, those matters which could in the tort case be decided in a way that is within coverage or outside of coverage. Opposing counsel says dairy land helps resolve this. I thought dairy land, there wasn't actually a settlement agreement. So what's the effect of dairy land? I think dairy land is, in one case, you actually have a litigated issue of ownership that was litigated, and so the court treated it as litigated and foreclosed under principles of collateral estoppel. Secondly, I would say dairy land is old law. I think it's a 1971 case before Vagnozzi, before Morris, before Arizona. Really, particularly in Vagnozzi, more in the Morris case looked at and made the decision, what position are we going to take in dealing with situations where insurers either deny coverage or more particularly reserve rights, and the insurer is put in the position of having to either accept the defense under reservation of rights and be put in a position where they can have a defense that's going to be leaving them potentially unexposed if there's a coverage decision. That's where the court addressed it and said, you know, here's how we're going to address these particular issues. And I think in this case, and this court in In re Davis several years ago, really recognized that these decisions from the Arizona Supreme Court have put dairy land into question. And so I think it's at this point questionable law. So should we certify this case then to the Arizona Supreme Court so that they can expressly overrule dairy land, if necessary, in order to resolve the issue here? I don't think that this court really needs to look for an express overruling of dairy land to resolve this case. And I would submit that this court can look at Vagnozzi and Morris and Manzanita v. INA, its earlier decision, and say, yes, there is a conflict of interest here between State Farm and its insured on the question of ownership. And because of that conflict of interest, then any stipulation that insured might reach that is subsumed in a silent default judgment is not going to be binding on coverage. So is your position then with respect to the question that I asked your opponent, there's no need to remand this case for trial on the question of ownership because the only facts that are germane to the ownership question are not disputed and are conclusively resolved as of January 9th? I would phrase it a bit differently, but from the standpoint of the facts establishing the contract as a valid and enforceable contract are undisputed. It's only the subsequent questions that came about, a certificate of title, insurance, things like that, and those are not, in view of the objectively manifested intent of the parties as of January 8th and 9th, those facts are immaterial. Okay. So they're not genuine, they're not material facts that are, even if they are in dispute, we don't care. Correct. Okay. All right. I've got it. Let me ask one. I want to make sure I understand how you apply Wood because I read Wood and I'm looking at paragraph 35 where the court in Wood says, here the coverage issues AAU seeks to litigate hinge on facts and law bearing directly on the insured's liability and those issues were completely subsumed in the consent judgment, albeit not actually litigated or determined by a trial or fact in the underlying tort action. And again, your opponent says, if it's completely subsumed, Wood says, you don't get to re-litigate it. You had your chance, you didn't step up to the plate, you're done. Distinguish Wood, disagree with that holding, disagree with my interpretation of that. Again, I believe the court reached that decision because AAU, as said in other parts of the case, AAU tried to open up everything. Understood. And in that context, they're saying since you're trying to open up everything, and even though you're saying some of these issues are relevant to coverage, they're subsumed. And I would say in the context, you know, if someone wants to look at it and say that under Arizona law, that means that a fact that is relevant to both coverage and liability, if it's decided in the underlying case by reason of Morris agreement, the insurer is going to be bound. I submit that that's contrary to both Bagnozzi and Morris. Aren't you inviting insurance companies then to say, we're going to deny a defense right now. You go fight the battle for us. If you lose, we're going to battle it all out again on the coverage issue in the second phase. Aren't you incentivizing an insurance company to try for the two bites at the apple instead of stepping up to the plate on its defense? No. Because you still have Morris out there. You still have Damron out there from the standpoint that if you lose the coverage issue, then in the Morris, you've bought that judgment. And as reflected here, that judgment is going to be, you know, they're typically well in excess of even the limits. But coverage isn't decided in the first case. Correct. Correct. So, and I think it's got to be, you have to then, for the insurance company, it has to be a legitimate coverage issue. And not something you can't go in there and say, well, since we didn't litigate it, we're not bound by any of that. The court's going to say no. It's going to look to see whether there's a conflict of interest. And if there's a conflict of interest to a litigated issue, then, you know, then it's not binding upon the insurance company. Thank you. Thank you very much, Mr. Bell. Mr. Amick, I'll give you a couple minutes in rebuttal. Thank you, Morris. Morris did not decide what happens when liability facts overlap with coverage. Wood did decide that. I don't believe there's actually a conflict between those two cases. If we look back to Vagnozzi, which also did not deal with an instance where the underlying judgment or agreement impacted coverage, but there's language that gives us guidance. On page 445, it states, a party will not be precluded from litigating policy coverage in a subsequent proceeding if the question of coverage turns on facts which are nonessential to the judgment of tort liability. And here, of course, ownership was essential to the judgment of tort liability. Okay, but in Morris, the court says right before its conclusion that it's sort of looking at what do we, how do we resolve the reasonable and prudent? Morris is going to do, we're going to review the Damron agreement and see if it's still reasonable and prudent. And in that analysis, the Morris court says that this involves evaluating the facts bearing on the liability and damage aspects of the claimant's case as well as the risk of going to trial. So isn't, under Morris, the trial court in that Damron review process looking at the liability that's been established already? Well, it's looking at the reasonableness of the settlement of the amount agreed to in the Morris agreement. In light of the potential for liability. In light of the potential for liability, yes, although in this case, we did not stipulate with the former defendants as to an amount of damages that was set by the trial court. So a reasonableness hearing really is not necessary in this case. If we remanded, would a reasonableness hearing have to occur? I don't believe it would, although I haven't actually, I'm not sure, Your Honor. It might. Okay. I do believe that if you allow State Farm to relitigate the issue of ownership, that it needs to be remanded for a trial. I think there are too many issues, too many conflicting issues. And if we look at the district court's opinion in this case, I think what happened is that the district court applied the wrong standard. A number of times in the section about ownership, it refers to the undisputed facts, and it lists the undisputed facts. And in the conclusion, the district court says that based on the undisputed facts, ownership was with the Bohorikases. But that why isn't that consistent with Mr. Bell's position that he and I talked about with regard to the operative facts stop on January 9th, and whatever happened afterwards may very well be contested. But who cares? They're not material. To the ownership issue. With respect to Mr. Bell, I don't believe that the operative facts do cease on January 9th. I think that there are conflicting facts after that that give rise to a jury question. Well, one way to re-judge Collins' summary judgment order would be consistent with the position that Mr. Bell is taking, that that's what the district court thought, that my goodness, I've got a signed contract here, and then I've got conduct immediately thereafter by the seller that's fully consistent with the fact that the sale was complete as of the night. But there's also actions on the part of the alleged seller and the alleged buyer that are inconsistent with the consummation of sale, including the Bohorikases' belief that they could not allow their daughter to drive out of town without permission, that they weren't allowed to sell it. And I think that it was also a mistake to ignore where the title was in this case. That's not determinative of ownership, but State Farm and the district court seem to read not determinative as irrelevant. The Rehnke case, the towing case that both parties cite, says that certificate of title is prima facie evidence of ownership. Here, unlike in Rehnke, where the title is signed over to the alleged owner, the Coxes retain the title. They never endorsed it until two days after the accident. Well, I mean, the problem I have with conduct after the accident occurs is there's a lot of running around here, you know, the first thing that Mr. Bohorikase does is he goes down and he gets new license plates and a certificate of title, and he tries to place insurance with Dairyland, et cetera, et cetera, all of which could be consistent with the argument I was teasing out a little earlier that the jury could just think that the Coxes were trying to do a favor to the Bohorikases here and sell them a car when they really couldn't afford to extend insurance coverage to them until they could afford to buy an insurance policy. I think a jury could also see that conduct as consistent with a finding that at the time of the accident, the Coxes retained ownership, and then they completed the sale after the accident. And if anything, I think the actions make it more difficult to make that argument. I think that it undermines any thought that they're being collusive because their actions seem to undermine the position that the Coxes retained ownership at the time. Okay. I think we have your arguments in mind. The case just argued is submitted. Thank you both for your argument.
judges: Gordon, Tallman, Ikuta